**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| AMANDA M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV57 |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Amanda M., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 11 (Commissioner's Brief); see also Docket Entry 12 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for the Commissioner.

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute for Leland C. Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for SSI on October 20, 2021 (Tr. 194-202), alleging a disability onset date of February 1, 2020 (see Tr. 196). Upon denial of that application initially (Tr. 77-87, 103-07) and on reconsideration (Tr. 88-98, 116-18), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 119). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 56-76.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 38-55.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 193, 303-13), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.  [Plaintiff] has not engaged in substantial gainful activity since October 20, 2021, the application date.
>
> 2.  [Plaintiff] has the following severe impairments: asthma, depression/bipolar, anxiety, and substance addiction disorder.
>
> . . .
>
> 3.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4.  . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except lifting/carrying 25 pounds occasionally and 10 pounds frequently; occasional crawling; no climbing

2

ladders/ropes/scaffolds; occasional exposure to humidity and extreme heat; occasional exposure to pulmonary irritants including fumes, odors, dust, and gas; occasional exposure to hazardous conditions including unprotected heights and moving machinery; simple, routine tasks; occasional interaction with the pubic; occasional workplace changes; and occasional independent decision making.

. . .

5.  [Plaintiff] has no past relevant work.

. . .

9.  Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

10.  . . . [Plaintiff] has not been under a disability, as defined in the [] Act, since October 20, 2021, the date the application was filed.

(Tr. 43-51 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

3

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ).” Id. at 179 (internal quotation marks omitted). “The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.” Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that “[a] claimant for disability benefits bears the burden of proving a disability,” Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, “disability” means the “‘inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,’” id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] “To regularize the adjudicative process, the Social Security Administration [(‘SSA’)] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition.” Id. “These regulations establish a

_____

[2] The Act “comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical.” Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[3]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the
(continued...)

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ did not build an accurate and logical bridge regarding [Plaintiff]'s degenerative disc disease [('DDD')] of the lumbar spine and spondylosis of the cervical spine" (Docket Entry 9 at 4 (bold font and block formatting omitted); see also Docket Entry 12 at 1-4);

2) "[t]he ALJ did not build an accurate and logical bridge regarding [Plaintiff]'s migraines" (Docket Entry 9 at 13 (bold font and block formatting omitted); see also Docket Entry 12 at 4-5); and

3) "[t]he ALJ did not build an accurate and logical bridge regarding social interaction limitations with coworkers and supervisors" (Docket Entry 9 at 16; see also Docket Entry 12 at 5-11).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 11 at 3-15.)

### 1. Lumbar DDD and Cervical Spondylosis

In Plaintiff's first issue on review, she asserts that "[t]he ALJ did not "build an accurate and logical bridge regarding [Plaintiff]'s [DDD] of the lumbar spine and spondylosis of the

---

[5] (...continued)
process, review does not proceed to the next step.").

cervical spine." (Docket Entry 9 at 4 (bold font and block formatting omitted); see also Docket Entry 12 at 1-4.) More specifically, Plaintiff maintains that "[t]he ALJ's [] analysis [at step two of the SEP] improperly focused only on [Plaintiff]'s scoliosis," and "did not mention [DDD] of the lumbar spine or spondylosis of the cervical spine, or any evidence relating to th[o]se impairments, e.g., the MRIs [sic] and clinical findings of tenderness and reduced range of motion." (Docket Entry 9 at 10 (referencing Tr. 43, 420, 423, 426, 429, 432-34).)[6] Plaintiff additionally argues that "the ALJ did not acknowledge probative evidence when evaluating [Plaintiff]'s subjective complaints and formulating the RFC assessment" (id. at 11), in that "[t]he ALJ did not acknowledge or mention that (1) [Plaintiff] received treatment from [] board-certified orthopedic surgeon [Dr. Chason S. Hayes] for back, neck, and radicular pain; (2) diagnostic testing confirmed [DDD] of the lumbar spine and spondylosis of the cervical spine; (3) physical examinations of [Plaintiff] showed tenderness and reduced range of motion in the lumbar and cervical spine; (4) Dr. Hayes prescribed various treatment, including [g]abapentin and [m]eloxicam; (5) Dr. Hayes referred [Plaintiff] to a pain physician for injections; and (6) [Plaintiff] stopped going to the pain clinic due to insurance" (id. at 11-12). According to Plaintiff, "[t]he ALJ's errors preclude reliance on the [VE]'s testimony

_____

[6] The record reflects only one MRI of Plaintiff's lumbar spine. (See Tr. 432.)

9

because the Court cannot meaningfully review whether [Plaintiff]'s [DDD] of the lumbar spine and spondylosis of the cervical spine would allow her to perform the occupations identified by the [VE]." (Id. at 12.)

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added). The Commissioner's regulations provide that a medically determinable impairment "must result from anatomical[ or] physiological . . . abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques[ and] . . . must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921 (emphasis added).[7] Furthermore, an ALJ cannot rely on a claimant's own "statement of symptoms, a diagnosis, or a medical opinion to establish the

_____

[7] The regulations define "objective medical evidence" as "laboratory findings" and/or "signs," i.e., "abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. § 416.902(f), (g).

10

existence of a[ medically determinable] impairment[ ]." Id. (emphasis added).[8]

"After [the ALJ] establish[es] that [a claimant] ha[s] a medically determinable impairment[], then [the ALJ] determine[s] whether [that] impairment is severe." Id. An impairment fails to qualify as "severe" if it constitutes "only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability . . . to perform basic work activities." Social Security Ruling 85-28, Titles II and XVI: Medical Impairments that Are Not Severe, 1985 WL 56856, at *3 (1985) ("SSR 85-28"). Applicable regulations further identify physical "basic work activities" as including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, [and] handling." 20 C.F.R. § 416.922(b). Plaintiff bears the burden of proving severity at step two. Hunter, 993 F.2d at 35; see also Kirby v. Astrue, 500

---

[8] Applicable to benefits claims filed on or after March 27, 2017 (such as Plaintiff's SSI claim (see Tr. 194)), the SSA amended the section governing the establishment of medically determinable impairments. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 5868-69, 2017 WL 168819 (Jan. 18, 2017). Prior to those amendments, an ALJ considered medical signs, laboratory findings, and a claimant's own statements to determine the presence of a medically determinable impairment. See 20 C.F.R. § 416.908 (version effective prior to Jan. 18, 2017). The amendments recodified the rule at Section 416.921 and now preclude ALJs from considering a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of a[ medically determinable] impairment[]." 20 C.F.R. § 416.921; see also SB v. Commissioner of Soc. Sec. Admin., No. CV-20-1842, 2021 WL 5150092, at *4 (D. Ariz. Nov. 5, 2021) (unpublished) ("To the extent that [prior district court and appellate cases within the Ninth Circuit] hold that medical opinions and diagnoses are relevant to determine an impairment at step two, that has been expressly foreclosed by the text of § 4[16.9]21. Instead, as discussed above, the [c]ourt finds that only the objective medical evidence in [the p]laintiff's medical records can be relevant to whether she had a medically determinable impairment . . . ." (internal citation omitted)).

11

F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." (internal citation omitted)).

Here, at step two of the SEP, the ALJ found Plaintiff's scoliosis a non-severe medically determinable impairment, but identified neither lumbar DDD nor cervical spondylosis as medically determinable impairments. (See Tr. 43.) The record contains objective medical evidence substantiating that Plaintiff had both lumbar DDD (see Tr. 432 (MRI of lumbar spine dated 11/14/22 reflecting mild disc height loss and small disc bulge causing mild bilateral neuroforaminal stenosis at L5-S1); see also Tr. 433 (x-ray of lumbar spine dated 9/12/22 documenting mild disc space narrowing at L5-S1 and facet degenerative changes in the lower spine)) and cervical spondylosis (see Tr. 434 (x-ray of cervical spine dated 9/12/22 recording disc space narrowing and spurring at C4-5, characterized as "moderate spondylosis")), as well as that she sought treatment for back and neck pain during the relevant period in this case (see Tr. 419-30 (containing treatment records from Dr. Hayes for complaints of back and neck pain from August to December 2022)). Thus, the ALJ erred by failing to find Plaintiff's lumbar DDD and cervical spondylosis as medically determinable impairments at step two of the SEP. For the reasons explained in more detail below, however, that error by the ALJ remains harmless under the circumstances presented here, as the

record demonstrates neither that the ALJ should have found Plaintiff's lumbar DDD or cervical spondylosis <u>severe</u> impairments, nor that the ALJ should have included <u>greater limitations in the RFC</u> on account of those impairments. <u>See generally</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

As to step two of the SEP, the record here would not have compelled the ALJ to find Plaintiff's lumbar DDD and cervical spondylosis severe impairments. Most significantly, Plaintiff herself failed to identify either lumbar DDD or cervical spondylosis as disabling impairments on her Disability Report form. (<u>See</u> Tr. 218 (listing "[s]coliosis," "[b]ipolar," "[a]nxiety," "[d]epression," "[chronic obstructive pulmonary disease ('COPD')]," and "[v]ision - wear glasses" as "<u>all</u> physical or mental conditions . . . that limit[ed her] ability to work" (emphasis added)); <u>see also</u> Tr. 252, 260 (denying that she had "any **NEW** physical or mental conditions on her Disability Report - Appeals forms, despite the fact that her hearing-level counsel completed both Appeals forms (<u>see</u> Tr. 251, 259))). Furthermore, at the hearing, Plaintiff's counsel failed to mention either lumbar DDD or cervical spondylosis as disabling impairments in her opening statement (<u>see</u> Tr. 62 (identifying "depression, bipolar related

13

disorder, asthma, anxiety," "[obsessive-compulsive disorder ('OCD')]," "scoliosis," and "COPD" as disabling impairments)), and Plaintiff did not identify lumbar DDD or cervical spondylosis in her testimony regarding her disabling physical conditions:

> [ATTY:] . . . [I]f you would please tell me in your own words . . . what physical conditions have you been diagnosed with that would prevent you from working?

> [PLAINTIFF:] Well, I have the scoliosis, and then I got, now that I'm older I guess my problem [is] I can't see that well. The COPD and the asthma, the anxiety, bipolar.

> [ATTY:] . . . So right now we're just going to deal with your physical conditions. And <u>you mentioned scoliosis, low vision and COPD. Are there any other physical conditions that you have been diagnosed with</u>?

> [PLAINTIFF:] <u>No</u>.

(Tr. 63 (emphasis added); <u>see also</u> Tr. 70 (denying that "any other conditions" existed that "[sh]e ha[d]n't mentioned that . . . stop[ped her] from being able to work").)

Plaintiff's failure to even mention lumbar DDD and cervical spondylosis in her application materials and testimony in support of her claim, despite the assistance of counsel, significantly undercuts her contention that the ALJ should have found those impairments severe. <u>See</u> <u>Walterman v. Colvin</u>, No. 15CV3860, 2016 WL 8199313, at *7 (D. Minn. June 24, 2016) (unpublished) (finding no error in ALJ's determination that the plaintiff's borderline intellectual functioning rated as non-severe, where the plaintiff's "cognitive impairments were not even listed in [his] current

14

application for disability benefits"); <u>O'Brien v. Colvin</u>, No. 1:15CV536, 2016 WL 2755459, at *7 (M.D.N.C. May 11, 2016) (unpublished) ("To the extent [the p]laintiff contends the ALJ committed a step two error by failing to identify [the p]laintiff's auditory impairments as severe, [his] failure to list those conditions in his Disability Report [] defeats that claim."), <u>recommendation adopted</u>, 2016 WL 5660296 (M.D.N.C. Sept. 30, 2016) (unpublished) (Tilley, S.J.); <u>Ramsey v. Colvin</u>, No. 1:10CV618, 2014 WL 639562, at *7 (M.D.N.C. Feb. 18, 2014) (unpublished) (holding that "[s]ubstantial evidence [] support[ed] the ALJ's omission of . . . [gastroesophageal reflux disease ('GERD')] from the list of severe impairments" because, among other things, "[the p]laintiff did not even mention GERD as an impairment on her Disability Report or at her hearing" (internal parenthetical citations omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 27, 2014) (Tilley, S.J.); <u>Abdullahi v. Colvin</u>, No. 4:12CV3185, 2013 WL 6239385, at *11 (D. Neb. Dec. 2, 2013) (unpublished) (deciding that "ALJ properly excluded [the plaintiff's] hearing loss from [the] list of severe impairments" because, inter alia, the plaintiff "failed to raise it in her application for benefits"); <u>see also</u> <u>Frederick v. Commissioner of Soc. Sec.</u>, Civ. No. 10-11349, 2011 WL 1518966, at *9 (E.D. Mich. Mar. 25, 2011) (unpublished) ("[T]he courts frown upon 'sandbagging' administrative decisions by presenting . . . issues for the first

15

time upon judicial review which could have been raised before the ALJ."), recommendation adopted, 2011 WL 1518913 (E.D. Mich. Apr. 20, 2011) (unpublished). However, even if the ALJ should have found Plaintiff's lumbar DDD and cervical spondylosis severe impairments, for the following reasons, Plaintiff cannot show that such an error prejudiced her. See generally Fisher, 869 F.2d at 1057.

First, and most importantly, where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his [or her] disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256–57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). In this case, the ALJ found four severe impairments and two non-severe impairments (including scoliosis) (see Tr. 43) and proceeded with the remaining steps of the SEP (see Tr. 44-51). Moreover, the ALJ's RFC includes limitations to 25 pounds of

occasional lifting/carrying, 10 pounds of frequent lifting/carrying, occasional crawling, and no climbing of ladders, ropes, and scaffolds (see Tr. 46), and Plaintiff has not identified any additional limitations the ALJ should have included in the RFC to account for her lumbar DDD and cervical spondylosis (see Docket Entries 9, 12). Under such circumstances, any alleged improper application of law by the ALJ at step two caused Plaintiff no prejudice. See Ely v. Colvin, No. 1:12CV75, 2014 WL 2967913, at *12 (M.D.N.C. July 1, 2014) (unpublished) ("[A]lthough [the p]laintiff claims the ALJ failed to address [the plaintiff's left foot cold weather injury and/or degenerative disc disease] in devising the RFC, [he] has not identified a single restriction the ALJ should have included to account for them." (internal parenthetical citation omitted)), recommendation adopted, slip op. (M.D.N.C. Mar. 11, 2015) (Tilley, S.J.); Cook v. Colvin, No. 1:11CV87, 2014 WL 317847, at *3 (M.D.N.C. Jan. 29, 2014) (unpublished) (Eagles, J.) ("[T]he ALJ's failure to expressly discuss [the plaintiff's] obesity (whether classified as severe or not) in conjunction with [the ALJ's] RFC assessment constitutes harmless error. In [the plaintiff's] arguments to the Court, [he] does not identify any unaddressed limitations that he believes his obesity causes. As such, no basis exists for a remand." (citing Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005) (ruling remand for express consideration of obesity unnecessary where [the]

plaintiff failed to specify how her obesity would impact the ALJ's analysis))).

Second, the record evidence relating to Plaintiff's lumbar DDD and cervical spondylosis would not have compelled the ALJ to include greater limitations in the RFC. The ALJ expressly acknowledged "[Plaintiff's] testi[mony] that her scoliosis hurt[] her back and legs[ and] cause[d] burning and stinging, [] she d[id] not sleep a lot because of it, . . . she had pain in her legs from the right side of her leg to the kneecap and into her shoulder and ear, . . . she fe[lt] pain four or five times a day, and she t[ook] over the counter medicine" (Tr. 46), but found her "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [] not entirely consistent with the medical evidence and other evidence in the record" (Tr. 47). Plaintiff notes that the ALJ discounted the severity of Plaintiff's back and neck pain because that pain "'ha[d] not required significant medical treatment and ha[d] not resulted in any continuous exertional or nonexertional functional limitations'" (Docket Entry 11 at 9 (referencing Tr. 43) (quotation marks and brackets added)), but "did not acknowledge or mention that [Plaintiff] stopped going to the pain clinic due to insurance and, thus, penalized her for not being able to afford treatment" (id.)

The United States Court of Appeals for the Fourth Circuit has held that "[a] claimant may not be penalized for failing to seek

treatment she cannot afford," because "'[i]t flies in the face of
the patent purposes of the . . . Act to deny benefits to someone
. . . too poor to obtain medical treatment that may help h[er].'"
Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting
Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).  An
administrative ruling further expounds on an ALJ's duties when a
claimant alleges an inability to afford treatment as follows:

> . . . [I]f the frequency or extent of the treatment
> sought by an individual is not comparable with the degree
> of the individual's subjective complaints, . . . [the
> ALJ] may find the alleged intensity and persistence of an
> individual's symptoms are inconsistent with the overall
> evidence of record.  [The ALJ] will not find an
> individual's symptoms inconsistent with the evidence in
> the record on this basis without considering possible
> reasons he or she may not . . . seek treatment consistent
> with the degree of his or her complaints.  [The ALJ] may
> need to contact the individual regarding the lack of
> treatment or, at an administrative proceeding, ask why he
> or she has not . . . sought treatment in a manner
> consistent with his or her complaints.  When [the ALJ]
> consider[s] the individual's treatment history, [the ALJ]
> may consider (but [is] not limited to) one or more of the
> following:
>
> . . .
>
> An individual may not be able to afford treatment and may
> not have access to free or low-cost medical services.
>
> . . .
>
> [An ALJ] will consider and address reasons for not
> pursuing treatment that are pertinent to an individual's
> case.  [The ALJ] will review the case record to determine
> whether there are explanations for inconsistencies in the
> individual's statements about symptoms and their effects,
> and whether the evidence of record supports any of the
> individual's statements at the time he or she made them.
> [The ALJ] will explain how [he or she] considered the

individual's reasons in [the ALJ's] evaluation of the
individual's symptoms.

SSR 16-3p, 2017 WL 5180304, at *9-10 (emphasis added) (bullet
omitted).

The record here indeed reflects both that Plaintiff's
orthopedist Dr. Hayes referred Plaintiff to a pain clinic for
injections (see Tr. 430), and that Plaintiff reported to her
primary care provider that Plaintiff could not continue treating at
the pain clinic due to lack of insurance coverage (see Tr. 445).
Notably, however, Plaintiff remained financially able to continue
obtaining treatment for other conditions with her primary care
provider after Dr. Hayes's December 2022 referral to the pain
clinic, but did not complain about or seek treatment for back and
neck pain. (See Tr. 440-49.) Moreover, Plaintiff's alleged
inability to afford injections at the pain clinic does not explain
why she could not have sought relief of her back and neck pain at
additional visits with Dr. Hayes (or another orthopedist) or at
free or low-cost providers, and does not explain the absence of
treatment for back and neck pain from her alleged onset date of
October 20, 2021, to the date of her first treatment of record for
back and/or neck pain on June 23, 2022 (see Tr. 470-74). Under
such circumstances, the ALJ did not err by discounting Plaintiff's
subjective complaints of back and neck pain based in part on her
limited treatment for those conditions. See Byers v. Berryhill,
No. 1:17CV103, 2018 WL 318466, at *9 (M.D.N.C. Jan. 5, 2018)

20

(unpublished) (finding no error in ALJ's rejection of the plaintiff's alleged inability to afford treatment, where "there [wa]s no indication that [the p]laintiff ha[d] explored the availability of free or reduced cost medical services," and "it [wa]s incumbent on [the p]laintiff to explore such availability rather than simply concluding that he c[ould] not pay for any medical care" (emphasis and internal quotation marks omitted)), recommendation adopted, slip op. (M.D.N.C. Apr. 4, 2018) (Tilley, S.J.); Hawley v. Colvin, No. 5:12CV260, 2013 WL 6184954, at *8 (E.D.N.C. Nov. 25, 2013) (unpublished) (finding no error in ALJ's consideration of the plaintiff's lack of treatment for back pain, where "[the plaintiff] testified that he [went] to the free clinic twice a week for counseling and for medical treatment for hypertension and asthma, but not for his back pain" (emphasis added)).

The remainder of the record evidence relating to Plaintiff's lumbar DDD and cervical spondylosis would not have compelled the ALJ to include greater limitations in the RFC. Those records reflect an approximately six-month course of treatment from June 23, 2022, to December 16, 2022 (see Tr. 419-30, 470-74), which documented spinal tenderness and/or reduced range of motion but intact gait, strength, reflexes, pulses and sensation, and negative straight leg raising tests (see Tr. 420, 423, 426, 429, 472). Treatment consisted of anti-inflammatory and nerve pain medication

21

(see Tr. 421, 424, 427, 473), and imaging reflected mainly <u>mild</u> findings (<u>see</u> Tr. 432-34).[9]  Moreover, as addressed earlier, Plaintiff failed to include lumbar DDD or cervical spondylosis among her allegedly disabling impairments in her application materials (<u>see</u> Tr. 218, 252, 260) or to testify as to those impairments at her hearing (<u>see</u> Tr. 56-76), which undermines her contention on judicial review that the ALJ failed to account for those impairments in the RFC, <u>see</u> <u>Allison v. Kijakazi</u>, No. 1:21CV890, 2023 WL 143201, at *5 & n.6 (M.D.N.C. Jan. 10, 2023) (unpublished) (holding that "[the p]laintiff simply ha[d] not shown that the medical evidence should have compelled the ALJ to adopt limitations . . . in the RFC to account for [the p]laintiff's headaches," where "[the plaintiff] did not list headaches among her allegedly disabling conditions on any of her Disability Reports"), <u>recommendation adopted</u>, 2023 WL 7924175 (M.D.N.C. Feb. 3, 2023) (unpublished) (Eagles, J.); <u>O'Brien</u>, 2016 WL 2755459, at *7 ("[T]he ALJ did not err by failing to include any limitations in the RFC

_____

[9] Plaintiff faults the ALJ for not <u>expressly</u> discussing Dr. Hayes's treatment records and the lumbar and cervical imaging he ordered. (<u>See</u> Docket Entry 9 at 11-12.)  The ALJ did cite that evidence generally but did not discuss it in any detail. (<u>See</u> Tr. 43.)  However, given the brevity of Plaintiff's treatment for back and neck pain (<u>see</u> Tr. 419-30, 470-74), and her failure to allege lumbar DDD and cervical spondylosis as disabling impairments (<u>see</u> Tr. 56-76, 218, 252, 260), the ALJ did not commit legal error in failing to specifically discuss that evidence, <u>see</u> <u>McNeil v. Saul</u>, No. 1:19CV213, 2020 WL 5111246, at *5 (M.D.N.C. Aug. 31, 2020) (unpublished) (declining to find error arising out of ALJ's failure to discuss left knee MRI in RFC discussion, where "[the p]laintiff did not include any left knee conditions among his allegedly disabling impairments on his Disability Report and [] did not testify at either his original or the supplemental hearing about any problems with his left knee" (internal parenthetical citation omitted)), <u>recommendation adopted</u>, 2020 WL 5821076 (M.D.N.C. Sept. 30, 2020) (unpublished) (Osteen, J.).

22

related to [the p]laintiff's hearing loss and tinnitus[,] . . . [because] Plaintiff did not include hearing loss or tinnitus in the list of disabling impairments on his Disability Report[, and t]hat fact undermine[d] his suggestion [] that such conditions may have caused functional limitations"); Thomas v. Colvin, Civ. No. 1:13-1294, 2014 WL 2611720, at *1-2, 13 (D.S.C. June 11, 2014) (unpublished) (rejecting argument that "ALJ erred by failing to discuss [the p]laintiff's obesity in the RFC analysis" because, inter alia, the plaintiff "did not allege obesity as an impairment in his Disability Reports").

Put simply, Plaintiff's first issue on review fails as a matter of law.

### 2. Migraine Headaches

Plaintiff's second assignment of error asserts that "[t]he ALJ did not build an accurate and logical bridge regarding [Plaintiff]'s migraines." (Docket Entry 9 at 13 (bold font and block formatting omitted); see also Docket Entry 12 at 4-5.) In particular, Plaintiff contends that, "[d]espite treatment records and other evidence showing a diagnosis and treatment for migraines, the ALJ never acknowledged migraines in the step-two analysis or elsewhere in the decision" (Docket Entry 9 at 15), "and the ALJ's broad reference that all other alleged impairments were not severe precludes meaningful judicial review" (id. (referencing Tr. 43)). Plaintiff additionally argues that, "[d]espite treatment records

23

showing [Plaintiff] was sensitive to light and sound, the RFC assessment contained no limitation on light or sound nor an explanation for their absence," and, despite "treatment records show[ing] that migraines could last for days, [] the ALJ never explained whether [Plaintiff]'s migraines would result in absences or limitations on task performance." (Id.) In Plaintiff's view, the ALJ's failure to "ma[k]e any specific findings regarding the frequency, severity, duration, and work-related effects of [Plaintiff]'s migraines[ violated ] *Woody* [*v. Kijakazi*, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (unpublished)] and *Darlene A.*[ *v. Colvin*, No. 1:23CV976, 2024 WL 5262869, at *4-6 (M.D.N.C. Dec. 21, 2024) (unpublished)]." (Id.) For the reasons that follow, the ALJ here did not err by failing to make findings regarding the frequency, severity, and duration of Plaintiff's alleged migraine headaches or by failing to include in the RFC limitations relating to exposure to light and sound or off-task time and absence, because Plaintiff did not provide evidence establishing that migraine headaches even qualified as a medically determinable impairment, let alone a severe impairment.

Social Security Ruling 19-4p, <u>Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders</u>, 2019 WL 4169635 (Aug. 26, 2019) ("SSR 19-4p"), provides that a claimant must present

24

evidence of the following criteria to establish migraine headaches

as a medically determinable impairment:

> [H]eadaches not better accounted for by another [] diagnosis [recognized by the third edition of the International Classification of Headache Disorders ("ICHD-3")] and <u>at least five headache attacks</u> satisfying the following criteria:
>
> · Lasting <u>4 to 72 hours</u> (<u>untreated or unsuccessfully treated</u>); and
>
> · At least two of the following four characteristics:
>
>> · Unilateral location;
>>
>> · Pulsating quality;
>>
>> · Moderate or severe pain intensity; or
>>
>> · Aggravation by or causing avoidance of routine physical activity (for example, walking or climbing stairs); and
>>
>> · During headache, at least one of the following:
>>
>>> · Nausea or vomiting, or
>>>
>>> · Photophobia and phonophobia.

SSR 19-4p, 2019 WL 4169635, at *5 (emphasis added) (footnotes

omitted).

Here, the record, which contains treatment notes spanning

nearly three years from May 29, 2020 (<u>see</u> Tr. 326-33), to March 22,

2023 (<u>see</u> Tr. 440-44), reflects only <u>one</u> occasion on which

Plaintiff complained of a migraine headache (<u>see</u> Tr. 460-63). On

July 27, 2022, Plaintiff reported to her primary care provider that

she had a "migraine on the left side of her head that started a few

days [earlier]," with "sensitivity to light and sound," and "nausea but no vomiting." (Tr. 460.) The provider described Plaintiff as "ill-appearing, sitting in a dark exam room" (Tr. 462) and administered a promethazine injection for Plaintiff's nausea (see Tr. 463). That sole report of a migraine headache falls far below the "at least five headache attacks" required by SSR 19-4p to establish migraine headaches as a medically determinable impairment, SSR 19-4p, 2019 WL 4169635, at *5 (emphasis added).

The other record evidence Plaintiff highlights similarly fails to meet SSR 19-4p's criteria to qualify Plaintiff's migraine headaches as a medically determinable impairment. Plaintiff notes that, "[i]n disability paperwork, [she] stated she took Excedrin Migraine and Goody's powder as needed for headaches" (Docket Entry 9 at 13 (citing Tr. 290)), but fails to explain how medication taken "as needed" (Tr. 290) demonstrates that she experienced "at least five headache attacks," SSR 19-4p, 2019 WL 4169635, at *5 (emphasis added). Plaintiff further relies upon "[t]reatment records in October 2022 and March 2023 [that] reported an active problem of migraines." (Docket Entry 9 at 14 (citing Tr. 445, 450).) Although treatment notes from both primary care visits listed "Classic Migraine (With Aura)" (Tr. 445, 450) among Plaintiff's "Active Problems [and C]onditions" (id. (all caps font omitted)), at both visits, Plaintiff denied current headache (see Tr. 446, 451), and the provider neither assessed migraine headaches

26

(see Tr. 448, 452), nor prescribed any treatment for them (see Tr. 449, 454). Plaintiff additionally points out that "Dr. Hayes's treatment records from August 2022 to December 2022 noted a past medical history of migraines" (Docket Entry 9 at 14 (emphasis added) (citing Tr. 419, 422, 425, 428)), but does not explain how a "past" history of migraines would have any tendency to show that Plaintiff experienced migraines at the frequency required by SSR 19-4p during the relevant period in this case (see id.).

Because Plaintiff has clearly not presented the evidence required by SSR 19-4p to establish migraine headaches as a medically determinable impairment, she has failed to show any error by the ALJ relating to migraine headaches, and Plaintiff's second assignment of error thus provides no basis for relief.

### 3. Interaction with Coworkers and Supervisors

In Plaintiff's third and final assignment of error, she maintains that "[t]he ALJ did not build an accurate and logical bridge regarding social interaction limitations with coworkers and supervisors." (Docket Entry 9 at 16; see also Docket Entry 12 at 5-11.) More specifically, Plaintiff notes that "[t]he sole basis for the [ALJ's RFC] limitation of occasional interaction with the public was [Plaintiff]'s continued prescription of medication for her mental impairments" (Docket Entry 9 at 18 (referencing Tr. 49)), and argues that "the ALJ did not explain why th[at] evidence . . . would not extend to social interaction with

27

coworkers and supervisors" (id.). In that regard, Plaintiff points out that "the ALJ noted earlier in the decision[ that Plaintiff] reported problems getting along with everyone, which would include coworkers and supervisors." (Id. (referencing Tr. 45 (in turn referencing Tr. 229)).) According to Plaintiff, "[t]he ALJ's consideration of social interaction limitations with only the public is contrary to the guidance in Social Security Ruling 85-15[, Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857 (1985) ('SSR 85-15'),] because that ruling emphasizes that interaction with coworkers and supervisors, not the public, is a basic demand of unskilled work." (Id. (referencing SSR 85-15, 1985 WL 56857, at *4).) As explained more fully below, Plaintiff's contentions ultimately miss the mark.

The ALJ's decision did not sufficiently explain why she limited Plaintiff's interaction with the public but not with supervisors and coworkers. At step three of the SEP, the ALJ expressly acknowledged that "[Plaintiff] stated that she has problems getting along with family, friends, neighbors, or others because she does not like people" (Tr. 45 (referencing Tr. 229)) in finding Plaintiff moderately limited in interacting with others (see id.). That statement by Plaintiff, which the ALJ did not expressly discount (see Tr. 45-47), would support limitations on interaction with coworkers, supervisors, and the public. In the

28

ALJ's discussion of the mental RFC, she provided the following
rationale for the RFC's mental limitations:

> Turning to [Plaintiff]'s severe mental impairments
> including depression/bipolar, anxiety, and substance
> addition disorder, her treatment notes reveal these
> conditions are stable with current treatment.
> Specifically, other than [Plaintiff]'s report that she
> was bothered by feeling down, depressed, or hopeless and
> bothered by little interest or pleasure doing things
> during an emergency room follow-up by her primary care
> provider in July 2022, [Plaintiff] was alert, oriented
> times three, well-appearing, with normal appearance and
> no depression alternating with periods of elation; no
> racing thoughts; and was not bothered by feeling down,
> depressed, or hopeless during primary care provider
> visits during examinations. [Plaintiff]'s treatment has
> consisted of the prescription of Abilify and
> Buspar. [Plaintiff] has not participated in individual
> or group counseling and has not required intensive
> therapy, inpatient therapy or hospitalization for her
> severe mental impairments. Nonetheless, the [ALJ] has
> limited [Plaintiff] to simple, routine tasks; <u>occasional
> interaction with the public</u>; occasional workplace
> changes; and occasional independent decision making
> because of her depression/bipolar, anxiety, and substance
> addiction disorder.

(Tr. 48 (emphasis added) (internal parenthetical citations
omitted).) That discussion entirely fails to explain why
Plaintiff's mental symptoms warranted a limitation on interaction
with the public but not with coworkers and supervisors.

The ALJ's discussion of the opinion evidence similarly fails
to shed any light on her omission from the RFC of interaction
limitations involving coworkers and supervisors. The state agency
psychological consultants did not include any interaction
limitations in their mental RFCs, opining only that Plaintiff
remained able to perform "simple routine tasks" (Tr. 81, 85) and

29

"simple and unskilled work" (Tr. 91). The ALJ deemed those administrative findings "persuasive" and stated that "[t]he medical evidence of record also support[ed] <u>additional</u> limitations." (Tr. 49 (emphasis added).) In that regard, the ALJ found that "the continued prescription of Abilify and Buspar for anxiety disorder and bipolar disorder support[ed] limitations including <u>occasional interaction with the public</u> and occasional workplace changes." (<u>Id.</u> (emphasis added).) Again, that explanation wholly fails to explain why the "continued prescription of Abilify and Buspar" (<u>id.</u>) would not also warrant limiting Plaintiff's interaction with coworkers and supervisors. Consultative psychological examiner Dr. Carol S. McCleary opined that Plaintiff would have "[m]oderate" limitation in her "[a]bility to interact with coworkers and with the public," further defined as "[s]ome problems that might be successfully dealt with through modifications or accommodations." (Tr. 417.) The ALJ found that opinion "persuasive" and "supported by and consistent with the medical evidence of record" (Tr. 49), but then inexplicably included only a limitation in the RFC to interaction with the public (<u>see</u> Tr. 46). The ALJ's failure of explanation regarding limitations on interaction with coworkers and supervisors precludes meaningful judicial review.

That error by the ALJ remains harmless, <u>see generally</u> <u>Fisher</u>, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a

30

perfect opinion unless there is reason to believe that the remand might lead to a different result"), because, as the Commissioner argues, "the jobs identified [by the VE and adopted] at step five [of the SEP by the ALJ] could be performed even if Plaintiff had more restricted social interaction limitations" (Docket Entry 11 at 14). The <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") codes for all three of the jobs the ALJ ultimately found Plaintiff able to perform (<u>see</u> Tr. 50) contain a fifth digit (or "People" rating) of "8," <u>DOT</u>, No. 318.6**8**7-010 ("Kitchen Helper"), 1991 WL 672755 (G.P.O. 4th ed. rev. 1991); <u>DOT</u>, No. 920.5**8**7-018 ("Hand Packager"), 1991 WL 687916; <u>DOT</u>, No. 317.6**8**7-010 ("Cook Helper"), 1991 WL 672752, which means that the jobs' interaction-related tasks primarily entail "Taking Instructions – Helping," further defined in the <u>DOT</u> as "[a]ttending to the work assignment instructions or orders of [a] supervisor[ with <u>n]o immediate response required unless clarification of instructions or orders is needed</u>," <u>see</u> <u>DOT</u>, App'x B, ("Explanation of Data, People, and Things"), 1991 WL 688701 (emphasis added). Moreover, each job rates the degree of "Taking Instructions - Helping" as "<u>Not Significant</u>," <u>DOT</u>, No. 318.6**8**7-010 ("Kitchen Helper"), 1991 WL 672755; <u>DOT</u>, No. 920.5**8**7-018 ("Hand Packager"), 1991 WL 687916; <u>DOT</u>, No. 317.6**8**7-010 ("Cook Helper"), 1991 WL 672752 (emphasis added), which "reflect[s] the lowest possible level of human interaction that exists in the labor force," <u>Fletcher v. Colvin</u>, No. 1:15CV166, 2016 WL 915196, at

31

*10 (M.D.N.C. Mar. 4, 2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, C.J.). Furthermore, all three jobs identify the task of "Talking" as "Not Present - Activity or condition does not exist." <u>DOT</u>, No. 318.6**8**7-010 ("Kitchen Helper"), 1991 WL 672755; <u>DOT</u>, No. 920.5**8**7-018 ("Packager, Hand"), 1991 WL 687916; <u>DOT</u>, No. 317.6**8**7-010 ("Cook Helper"), 1991 WL 672752.

Consequently, Plaintiff has not shown that remand for the ALJ to include limitations in the RFC on interaction with coworkers and supervisors would result in a different outcome in her case, <u>see Ridley G. v. Commissioner of Soc. Sec.</u>, No. 1:20CV773, 2021 WL 4307507, at *8, *13 (N.D.N.Y. Sept. 22, 2021) (unpublished) (deciding that RFC restriction to <u>no</u> interaction or tandem tasks with coworkers harmonizes with jobs with <u>DOT</u> level 8 interaction); <u>Scott C. v. Commissioner of Soc. Sec.</u>, No. 2:20CV109, 2021 WL 2682276, at *4-5 (D. Vt. June 30, 2021) (unpublished) (deeming "level 8 interaction [] compatible with an RFC limiting a claimant to only <u>superficial</u> contact with coworkers, supervisors, and the public" (brackets and internal quotation marks omitted) (emphasis added)); <u>Wilson v. Saul</u>, No. 1:19CV1089, 2020 WL 6293132, at *4 (M.D.N.C. Oct. 27, 2020) (unpublished) (Webster, M.J.) (finding any error arising out of "[t]he ALJ's decision to omit any limitation in [the p]laintiff's ability to interact with co-workers and supervisors . . . harmless because the jobs the ALJ concluded that

[the p]laintiff could perform d[id] not require significant social interactions," and "the [<u>DOT</u>] descriptions of the jobs . . . list interaction with 'People' as being 'Not Significant'"), <u>recommendation adopted</u>, slip op. (M.D.N.C. Nov. 24, 2020) (Biggs, J.); <u>Eldridge v. Berryhill</u>, No. CV 16-5289, 2018 WL 1092025, at *2 (W.D. Ark. Feb. 28, 2018) (unpublished) (holding jobs categorized by <u>DOT</u> as involving level 8 interaction consistent with restriction to "<u>limited</u> contact with the general public" and "<u>incidental</u> contact with co-workers" (emphasis added)); <u>Alie v. Berryhill</u>, No. 4:16CV1353, 2017 WL 2572287, *16 (E.D. Mo. June 14, 2017) (unpublished) (ruling that "[l]evel 8 interaction is compatible with a[n] RFC limiting a claimant to only <u>superficial</u> contact with coworkers, supervisors, and the public" (emphasis added)); <u>Shorey v. Astrue</u>, No. 1:11CV414, 2012 WL 3475790, at *6 (D. Me. July 13, 2012) (unpublished) (holding that "inclusion of a limitation to <u>occasional</u>, <u>brief</u>, and <u>superficial</u> contact with coworkers and supervisors in the [ALJ]'s hypothetical question would not have excluded" jobs with <u>DOT</u> "People" rating of 8), <u>recommendation adopted</u>, 2012 WL 3477707 (D. Me. Aug. 14, 2012) (unpublished); <u>Flaherty v. Halter</u>, 182 F. Supp. 2d 824, 851 (D. Minn. 2001) (finding jobs with "not significant" levels of social interaction under the <u>DOT</u> compatible with ALJ's limitation to "<u>brief superficial</u> type of contact with co-workers and supervisors and members of the public" (emphasis added)).

33

In Plaintiff's Reply, she raises two arguments why the ALJ's failure to include in the RFC limitations on interaction with coworkers and supervisors does not qualify as harmless error. (See Docket Entry 12 at 6-11.) First, Plaintiff contests the relevance of the DOT's rating of "Talking" for all three jobs as "Not Present," because "[t]he ability of talking . . . refers to '[e]xpressing or exchanging ideas by means of the spoken word to impart oral information to clients or to the public and to convey detailed spoken instructions to other workers accurately, loudly, or quickly.'" (Id. at 7 n.28. (quoting Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), App'x C ("Physical Demands"), § 12 (U.S. Dep't of Labor 1993)).) According to Plaintiff, "[t]h[at] definition shows that the ability of talking relates to when that ability is part of the fundamental duties of the job, not the interaction when an individual is taking instructions or helping." (Id.) Even if, arguendo, the definition of "Talking" pertains to speaking as an essential function of the job, rather than the speaking involved in taking instructions and/or helping, Plaintiff has glossed over the fact that the DOT rates the degree of "Taking Instructions - Helping" as "Not Significant" for all three jobs in question, and indicates that "[n]o immediate response [to a supervisor is] required unless clarification of instructions or orders is needed," DOT, App'x B, 1991 WL 688701 (emphasis added).

34

Second, Plaintiff contends that "[t]he Commissioner takes administrative notice of reliable job information from various governmental and other publications" (Docket Entry 12 at 8 (citing 20 C.F.R. § 416.966(d))), and that "the United States Department of Labor's *The Revised Handbook for Analyzing Jobs* (*Revised Handbook*) provide[s] reliable job information" (id. (stray comma omitted) (second italics added)). According to Plaintiff, "[t]he *Revised Handbook* confirms that '[e]very job involves a relationship to a supervisor or to a set of instructions . . . [and] wherever such a relationship is *occupationally significant*, the analyst must provide an indication of that relationship.'" (Id. at 9 (first italics added) (second italics in original) (quoting *Revised Handbook*, Ch. 13 - "Writing Job Summaries and Descriptions of Tasks," at 13-7 (U.S. Dep't of Labor 1991)).) Plaintiff further notes that "[e]xamples in the worker function related to [P]eople include: instructs students, supervises workers, and serves customers." Id. (citing *Revised Handbook*, Ch. 13, at 13-7).) Plaintiff thus argues that "the reliable job information shows that the tasks for the [P]eople worker function relate to the nature of the interaction, not the frequency of interaction" (id. at 10 (emphasis added)), and that "the assessment of "[N]ot [S]ignificant" in the [P]eople worker function is not relevant to a specific frequency of social interaction" (id. (emphasis added)).

35

Plaintiff's argument overlooks the fact that the <u>DOT</u>, for each of the three jobs, rates the worker's relationship to "Things" as "Significant" but his or her relationship to "People" as "<u>Not Significant</u>." <u>DOT</u>, No. 318.6**8**7-010 ("Kitchen Helper"), 1991 WL 672755; <u>DOT</u>, No. 920.5**8**7-018 ("Packager, Hand"), 1991 WL 687916; <u>DOT</u>, No. 317.6**8**7-010 ("Cook Helper"), 1991 WL 672752 (emphasis added). Thus, although "every job involves a relationship to a supervisor," the job analyst that prepared the <u>DOT</u>'s job descriptions for Kitchen Helper, Hand Packager, and Cook Helper clearly indicated that, <u>for those jobs</u>, the relationship did not qualify as "*occupationally significant*." *Revised Handbook*, Ch. 13, at 13-7.

Furthermore, the <u>DOT</u>'s descriptions of the duties of each job make clear that interaction with coworkers and supervisors would not rise to the level of "*occupationally significant*," <u>id.</u> See <u>DOT</u>, No. 318.6**8**7-010 ("Kitchen Helper"), 1991 WL 672755 ("Performs any combination of following duties to maintain kitchen work areas and restaurant equipment and utensils in clean and orderly condition: Sweeps and mops floors. Washes worktables, walls, refrigerators, and meat blocks. Segregates and removes trash and garbage and places it in designated containers. Steam-cleans or hoses-out garbage cans. Sorts bottles, and breaks disposable ones in bottle-crushing machine. Washes pots, pans, and trays by hand. Scrapes food from dirty dishes and washes them by hand or places

36

them in racks or on conveyor to dishwashing machine. Polishes silver, using burnishing-machine tumbler, chemical dip, buffing wheel, and hand cloth. Holds inverted glasses over revolving brushes to clean inside surfaces. Transfers supplies and equipment between storage and work areas by hand or by use of handtruck. Sets up banquet tables. Washes and peels vegetables, using knife or peeling machine. Loads or unloads trucks picking up or delivering supplies and food."); DOT, No. 920.5**8**7-018 ("Packager, Hand"), 1991 WL 687916 ("Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. Records information, such as weight, time, and date packaged."); DOT, No. 317.6**8**7-010 ("Cook Helper"), 1991 WL 672752 ("Assists workers engaged in preparing foods for hotels, restaurants, or ready-to-serve packages by performing any combination of following duties: Washes, peels, cuts, and seeds vegetables and fruits.

37

Cleans, cuts, and grinds meats, poultry, and seafood. Dips food items in crumbs, flour, and batter to bread them. Stirs and strains soups and sauces. Weighs and measures designated ingredients. Carries pans, kettles, and trays of food to and from work stations, stove, and refrigerator. Stores foods in designated areas, utilizing knowledge of temperature requirements and food spoilage. Cleans work areas, equipment and utensils, segregates and removes garbage, and steam-cleans or hoses garbage containers. Distributes supplies, utensils, and portable equipment, using handtruck." (internal parenthetical material omitted)).

In sum, Plaintiff's third and final issue on review fails to demonstrate any grounds for remand.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
_____
**L. Patrick Auld**
**United States Magistrate Judge**

January 20, 2026